William HAYSLETT, Plaintiff,

v.

HARNISCHFEGER CORPORATION,
Defendant.

No. 92–0026–CV–W–2.

United States District Court,
W.D. Missouri, W.D.

Feb. 26, 1993.

David H. Bony, Kansas City, MO, for plaintiff

Gordon N. Myerson, James C. Morrow, Myerson, Monsees & Morrow, P.C., Kansas City, MO, for defendant.

## ORDER

GAITAN, District Judge.

### I. INTRODUCTION

Plaintiff allegedly suffered physical injures while operating a crane manufactured and marketed by the defendant. Plaintiff seeks to recover damages on the theory that defendant's product was defective and unreasonably dangerous when used as anticipated. Currently pending before the court are two motions: (1) Defendant's motion for leave to file its Motion for Summary Judgment out of time; and (2) Defendant's Motion for Summary Judgment.

At most, Defendant's Motion for Summary Judgment was filed four days past the deadline set forth in the court's Scheduling Order. While the court does not lightly permit parties to exceed the deadlines set by the court, the failure of defendant to comply with the Scheduling Order was neither excessive or significant. Further, plaintiff has failed to show that granting plaintiff leave to file out of time is unfairly prejudicial. Therefore, the court will grant defendant's request for leave to file out of time and will move on to the merits of the Motion for Summary Judgment.

## II. THE MOTION FOR SUMMARY JUDGMENT

### A) Standards Governing Summary Judgment

A movant is entitled to summary judgment pursuant to Fed.R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The moving party bears the burden of proof. *Aetna Life Ins. Co. v. Great National Corp.*, 818 F.2d 19, 20 (8th Cir.1987). When considering a motion for summary judgment, the court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving all doubts as to the facts or existence of any material fact against the moving party. *United States v. Conservation Chem. Co.*, 619 F.Supp. 162, 179–80 (W.D.Mo.1985).

Recently, the Supreme Court has redefined the standards to be considered in ruling on summary judgment motions. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated that "[i]n assessing whether a material fact is subject to a genuine dispute, a court should employ a standard essentially identical to that governing a motion for directed verdict under Rule 50(a)." *Id.* at 250, 106 S.Ct. at 2511. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Id.* at 586, 106 S.Ct. at 1356. If a rational trier-of-fact, considering the record as a whole, could not find in favor of the non-moving party, then a trial is unnecessary. *Id.*

Where, as in this case, the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2554.

If the moving party meets the requirement, the burden shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. The trial judge then determines whether a trial is needed. "[W]hether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

### B) Controlling Legal Standards

The crux of defendant's motion for summary judgment is that plaintiff's action is barred by the statute of limitations contained in Mo.Rev.Stat. § 516.097 (1986). Section 516.097 states as follows:

1. Any action to recover damages for personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which any such improvement is completed.

2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.

\*   \*   \*   \*   \*   \*

5. The statute of limitations for buildings completed on August 13, 1976, shall begin to run on August 13, 1976, and shall be for the time specified herein.

Mo.Rev.Stat. § 516.097 (1986). Defendant contends that plaintiff's action for personal injury arose out of an allegedly "defective or unsafe condition of [an] improvement to real property...." From § 516.097.5, defendant argues that the statute of limitations controlling plaintiff's cause of action began to run on August 13, 1976, and expired on August 13, 1986. Therefore, if the court accepts defendant's argument, summary judgment would be warranted given that plaintiff's complaint was not filed until December 6, 1991. However, before adopting defendant's conclusion the court must address the issues of (1) whether the crane is an "improvement" as that term is used in § 516.097; and (2) whether Harnischfeger is the type of defendant § 516.097 was designed to protect.

### 1) Defining "Improvement"

The Missouri Supreme Court has defined the term "improvement," within the context of statutory interpretation, as "[a] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *State v. Neill,* 397 S.W.2d 666, 669

(Mo.1966) (en banc). A complimentary definition was stated in *Huff v. Union Elec. Co.,* 598 S.W.2d 503 (Mo.Ct.App.1980). "An improvement has also been defined as " ' "work done or things built or placed upon land, rendering it more fit for use, and more capable of producing income." C.J. 308, note (a).' " *Id.* at 510 (quoting *Allen v. Jackson County Savings & Loan Ass'n,* 115 S.W.2d 7, 9 (1938)).

No Missouri court has defined the term "improvement" as used in § 516.097. However, this court sees no justification for departing from longstanding definitions of that term as defined by Missouri caselaw. Therefore, whether the crane that allegedly caused plaintiff's injuries is an "improvement" will be determined by an application of the facts to the above definitions.

### 2) Defining the Class of Defendants Protected by the Statute

Having defined "improvement," the court now moves to the heart of the current dispute: What defendants have the type of "connection" to the improvement that justifies inclusion in the class of defendants § 516.097 was designed to protect? *See* Mo. Rev.Stat. § 516.097.2 (1986).[1] In *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822 (Mo.1991) (en banc), the Missouri Supreme Court provided the general analytical framework dispositive of this issue.

In *Blaske,* the Court was faced with a plaintiff who was injured when he fell from a platform designed and built to provide service access to air conditioning and ventilation systems. *Id.* at 825. Plaintiff sued both the entities that constructed the platform, as well as the corporation that manufactured the air conditioning and ventilation systems. The defendants asserted the statute of limitations

---

1. Section 516.097.2 defines the class of defendants protected by the statute in terms of their *relationship* to the improvement. Essentially, only defendants whose "sole connection with the improvement is performing or furnishing ... the design, planning or construction ... of the improvement" are granted the benefit of the statute. Mo.Rev.Stat. § 516.097.2 (1986). As interpreted by the Missouri Supreme Court, § 516.097 covers only "(1) persons who furnish planning or design services (primarily architects and engineers, hereinafter called 'designers'); [and] (2) persons performing the actual construction of

the improvement ('builders')." *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 829–30 (Mo. 1991) (en banc). Excluded are "materialmen," which are those "who supply products or raw materials for the construction," and "owners and occupiers" which are "persons owning or possessing the real property." *Id.* at 830. Therefore, defendant Harnischfeger must first prove that it is a "designer" or "builder" before it is protected by § 516.097. *Id.* Second, Harnischfeger must establish that it was "connected" to the improvement as required by the analysis set forth in *Blaske.*

contained in § 516.097. Plaintiff primarily argued that the statute of limitations contained in § 516.097 was unconstitutional and therefore available to none of the defendants. However, plaintiff also argued that regardless of the statute's constitutionality, the manufacturer of the air conditioning and ventilation system, defendant SnyderGeneral Corporation, did not qualify for the benefits of the statute of limitations. *Id.* at 836. Specifically, plaintiff argued that the statute "was not intended by the legislature to cover off-site manufacturers of a pre-built air conditioner." *Id.* In responding to this dispute the Missouri Supreme Court set forth an analysis for determining if the statute of limitations stated in § 516.097 was available to defendant SnyderGeneral. *See Blaske,* 821 S.W.2d at 836–39. This analysis is controlling in determining if defendant Harnischfeger is covered by the statute.

Relying on *Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (Ct.App.), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977), the Court in *Blaske* adopted an "activity analysis" in determining whether a defendant is entitled to the protections of § 516.097. 821 S.W.2d at 837. The Missouri Supreme Court held that a defendant such as Harnischfeger may make "two separate and distinct arguments" that it is covered by the statute. *Id.* "First, a manufacturer may claim that its activity in fabricating, assembling or manufacturing building materials or a component part incorporated within the real property in the construction of the improvement 'is, performing or furnishing, ... construction, including ... construction services, of the improvement.'" *Id.* (quoting Mo.Rev.Stat. § 516.097.2 (1986)). The second, and alternative, argument available to a defendant such as Harnischfeger is that "it performed or furnished design, planning or engineering devices by reason of the design and engineering activities involved in developing its product." 821 S.W.2d at 838.

Under the first argument (the construction argument), the court in *Blaske* found that a defendant such as Harnischfeger is entitled to the statute's protection if it had "substantial participation at the construction site in significant activities in installing or incorporating the product into the real property...." 821 S.W.2d at 837. In further fleshing out this argument, the court looked to whether the product in question was "custom made" for the specific real property and project verses a mass produced product made for sale to the general public. *Id.* at 837–38. Where a defendant had substantial on-site participation in installing a custom product, the protection of § 516.097 is available. *Id.*

Application of the second argument (the design and engineering argument) is similar to the first. "[D]esign and engineering activities specifically undertaken to design or engineer a special [product] unique to this building would be within the statute." 821 S.W.2d at 838. Conversely, where the only design and engineering connected with the product is that normally associated with developing a product for marketing to the general public, the statute is not available to the defendant. *Id.* ("[I]f SnyderGeneral furnished to the general contractors of this project an air handling unit from its regular line of products as specified by the architects or engineers of that project, the engineering that defendant SnyderGeneral performed in connection with developing and manufacturing the air handling unit to make it available as a part of its general line of air conditioners available to the public is not the type of design activity protected by the statute").

Under either argument, the court must undertake an "activity analysis" that focuses on whether the crane in question was custom designed, engineered or constructed (with substantial on-site participation) by Harnischfeger as an improvement for the specific real property upon which it was installed.

### C) Analysis

In support of the motion for summary judgment, defendant has cited extensively to depositions, affidavits and documents in an attempt to demonstrate that no genuine issue of material fact exists. Upon review of these materials, the court concludes that defendant has met its initial burden of showing "an absence of evidence to support [plaintiffs'] case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554. Specifically, the court finds that defendant has set forth sufficient facts demonstrating that § 516.097 bars

plaintiff's action. Accordingly, the burden shifts to plaintiff to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. Plaintiff now bears the burden of producing specific facts showing that the application of § 516.097 is not appropriate. In response to this burden, plaintiff has set forth virtually no specific facts.[2] Therefore, the court shall grant defendant's motion for summary judgment.

1) Was the Crane an "Improvement?"

■ As both parties acknowledge, Missouri courts have not confronted the exact issue of whether a crane identical to the one that allegedly injured plaintiff is an "improvement." However, the court finds no reason why the general definitions of an "improvement" provided by *Neill* and *Huff* are not applicable in this context. Operating under these general definitions, the court finds that defendant has set forth sufficient uncontroverted facts to establish that no genuine issue exists as to whether the crane in question was an improvement.

Defendant has produced the following facts which support a finding that the crane was permanently placed on the Armco site: (1) The crane is firmly affixed to the Armco property by a number of concrete, piered footings which supported the crane's rail transport system, Affidavit of Andrew Toth, ¶ 4, Affidavit of K. Alan Niebrugge, ¶ 3; (2)

Access to the crane was accomplished by a system of catwalks, stairways and platforms incorporated into the crane's design, Affidavit of Andrew Toth, ¶ 4, Affidavit of K. Alan Niebrugge, ¶ 3; and (3) The crane cannot be moved to a new location without complete dismantling, Affidavit of Andrew Toth, ¶ 6, Affidavit of K. Alan Niebrugge, ¶ 5, Deposition of Plaintiff, pp. 27–28, 99–101.

That the crane was an "addition to or betterment of real property ... and [was] designed to make the property more useful or valuable ...," *Neill,* 397 S.W.2d at 669, is beyond dispute. The crane was an essential component to Armco's ongoing metal recycling business. Affidavit of K. Alan Niebrugge ¶ 6; *see also* Affidavit of Andrew Toth, ¶ 3, Deposition of Plaintiff, pp. 99–101 (indicating that the crane was a part of the recycling operation). It is also beyond dispute that the addition of the crane to the Armco site enhanced the "capital value" of the site and involved "the expenditure of labor or money." *Neill,* 397 S.W.2d at 669.

The court finds that the crane was an "improvement" as Missouri courts would interpret that term when used in § 516.097. *See Neill,* 397 S.W.2d at 669; *Huff,* 598 S.W.2d at 510; *see also Century Elec. Co. v. Terminal R.R. Ass'n of St. Louis,* 426 S.W.2d 58, 61 (Mo.1968) (implicitly holding that a "travelling crane" is an improvement).[3] Therefore, the court must now turn to the

---

2. In his Suggestions in Opposition to Defendant's Motion for Summary Judgment, plaintiff sets forth only two "disputed facts" and cites no affidavits, depositions or any other materials to verify these "facts." The "disputed facts" presented by plaintiff are as follows:

1. Plaintiff disputes defendant's factual allegations that the crane in question was, "designed ... according to the requirements as specified by Armco Steel ..." although Armco may have specified certain requirements, for the crane, the responsibility for design, fabrication and construction rests on the corporate shoulders of Harnischfeger Corporation and not Armco Steel Corporation.

2. Plaintiff Disputes the Allegation that the crane in question is affixed to Armco property in the manner intended under Section 516.097 R.S.Mo.

**Suggestions in Opposition to Defendant's Motion for Summary Judgment, p. 1.** The court finds that the "disputed facts" are nothing more than unsupported conclusions that merely beg

the questions presented by the motion for summary judgment. To survive defendant's motion for summary judgment, plaintiff must present specific facts (i.e. affidavits, deposition testimony, documents, etc.) manifesting a genuine dispute requiring trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. Further, as the party opposing summary judgment, plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Plaintiff has wholly failed to met this burden.

3. Defendant has cited extensively to caselaw from other jurisdictions holding that cranes very similar to the Harnischfeger crane in question are "improvements." Without questioning the correctness or applicability of these cases, the court finds that Missouri law is sufficiently defined to find that the crane is an improvement without turning to other jurisdictions.

issue of whether defendant Harnischfeger is the type of defendant covered by § 516.097.

### 2) Is Harnischfeger Within the Class of Defendants Protected by § 516.097?

Under *Blaske,* the court must undertake an "activity analysis" to determine if the crane was custom designed, engineered or constructed (with substantial on-site participation) by Harnischfeger. *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 837–38 (Mo.1991) (en banc). An affirmative finding will entitle Harnischfeger to the protection of § 516.097. *Id.* Defendant has produced a substantive factual basis to support such an affirmative finding. Plaintiff, on the other hand, has not countered with any specific facts demonstrating a genuine issue of material fact.

Defendant has produced affidavits and documents supporting the conclusion that Armco specially ordered the crane, designating the specifications necessary for use in the Armco metal recycling facility in Kansas City, Missouri. Affidavit of Andrew Toth, ¶ 3, Exhibit "C" attached to Defendant's Suggestions in Support of the Motion for Summary Judgment. Based upon these specifications, defendant "custom designed and built" a crane for the Armco facility. Affidavit of Andrew Toth, ¶ 3. "The crane was designed for the Kansas City Armco Steel facility according to the requirements as specified by Armco Steel and described in the proposal, for use in the facility's scrap metal recycling production." Affidavit of Andrew Toth, ¶ 3. Importantly, defendant has produced no facts demonstrating that Harnischfeger had any on-site role in erecting the crane. Indeed, the documents supplied by defendant indicate that the purchaser (Armco) bore the responsibility of erecting the crane. Exhibit "C" attached to Defendant's Suggestions in Support of the Motion for Summary Judgment.

Under the analysis developed in *Blaske,* the court finds that defendant has demonstrated a lack of any genuine issue of material fact. Accordingly, summary judgment is warranted. In *Blaske,* the Missouri Su-

preme Court set out two arguments available to Harnischfeger under the "activity analysis:" (1) The "construction argument;" and (2) The "design and engineering argument."

■ The court finds that the "construction argument" is unavailable to the defendant. Essentially, the absence of facts showing substantial on-site participation by Harnischfeger in the construction or erection of the crane forecloses this way of accessing the statute's protection. While the Court in *Blaske* did state that "production of the custom made product at a location away from the construction site will not necessarily defeat coverage under the statute," 821 S.W.2d at 837–38, the court went on to state that "[s]ubstantial on-site construction activity is an important factor for coming within the protection of the statute." *Id.* at 838.[4] Without facts showing on-site construction activity by Harnischfeger, summary judgment is not appropriate on this basis.

■ The "design and engineering argument," however, is available to defendant. Harnischfeger is entitled to protection under § 516.097 if "it performed or furnished design, planning or engineering devices by reason of the design and engineering activities involved in developing its product." 821 S.W.2d at 838. Most significantly, "design and engineering activities specifically undertaken to design or engineer a special [product] unique to this building would be within the statute." *Id.* Defendant has supplied ample support for the conclusion that defendant custom designed (and presumably engineered) the crane for installation at the unique site of the Armco recycling facility in Kansas City, Missouri. The facts set forth by defendant support the conclusion that Armco specially ordered a custom crane for installation at a specific and unique site. Harnischfeger designed and engineered this custom crane.

These facts supplied by defendant, and uncontested by plaintiff, qualify defendant for inclusion in the class of defendants cov-

---

4. By way of analogy, the court indicated that a carpenter who made custom cabinets away from the project site *and* installed them at the site would be accorded protection under the statute.

By implication, the court indicated that without on-site installation, the carpenter would not be protected by § 516.097.

ered by § 516.097. Defendant has shown that no genuine dispute exists as to whether Harnischfeger's "sole connection with the improvement [was] performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement." Mo.Rev.Stat. § 516.097.2 (1986). Indeed, defendant has set forth a factual basis supporting the conclusion that Harnischfeger's sole connection with the crane was in designing and engineering a custom crane exclusively for installation on a specific and unique site. Plaintiff has supplied no specific facts challenging this conclusion. Accordingly, plaintiff's action is time-barred by Mo.Rev.Stat. § 516.097 (1986), and defendant's motion for summary judgment will be granted.

## III. CONCLUSION

Based on the above discussion, it is ORDERED that the defendant's motion for summary judgment is GRANTED.